IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DEMETRIUS FLOWERS, B89995,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) |
| **WARDEN GALLOWAY,** | ) |
| **SGT. BENARD,** | ) |
| **C/O GARCIA,** | ) |
| **SGT. DELMON,** | ) |
| **C/O QUATTERS,** | ) Case No. 24-cv-1538-DWD |
| **C/O HARMON,** | ) |
| **COUNSELOR MOORE,** | ) |
| **JOHN DOES 1-2,** | ) |
| **JACOB HORN,** | ) |
| **M. HILL,** | ) |
| **LT. BRADFORD,** | ) |
| **C/O JOHNSON,** | ) |
| **SGT. CHARLESTON,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Demetrius Flowers, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center (Menard), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Shawnee Correctional Center (Shawnee). (Doc. 15). Plaintiff challenges events surrounding disciplinary proceedings that began in April of 2024 and continued through his transfer to Menard in May or June of 2024.

The Amended Complaint (Doc. 15) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE AMENDED COMPLAINT

On April 4, 2024, Plaintiff was escorted to segregation by Defendants Garcia and Benard. He alleges that over the course of multiple days he "stressfully requested and asked questions for [his] negative adjustment." (Doc. 15 at 5). Finally on April 16 or 17, 2024, he attended an interview with Defendants Harmon and Allison Moore. He alleges this interview occurred about twelve days after he was escorted to segregation, when per the Illinois Administrative Code, it should have occurred within 10 days. At the interview Harmon and Moore told him that Harmon had opened legal mail addressed to Plaintiff to perform a drug field test. Plaintiff challenges the accuracy of the field test, claims that it has a false positive rate as high as 38% and alleges it should only be used for "temporary" findings, to be replaced later by the findings of a lab test. He also challenges the timeline of events, claiming that Harmon's official report on the incident diverged with his own belief of when things occurred on April 4, 2024. (Doc. 15 at 5).

On May 1, 2024, Plaintiff attended a hearing held by Defendants R. Johnson, and C/O Reed and he was found guilty and punished with six months in segregation, three months of C-grade, and six months of contact visit restrictions. He faults Defendants Lt. Bradford, Michael Hill, Major Crawford[1], and Darren Galloway for participating in or signing for these actions. (Doc. 15 at 5).

Plaintiff then alleges that as a result of the "faulty" disciplinary outcome, he was transferred to Menard "max" correctional center. (Doc. 15 at 7). He describes the conditions at Menard as a hardship that highly impacted him. He was on lockdown 24/7, he was shackled when he had visits, he got only five showers over the course of 97 days[2], and he endured numerous environmental irritants. Environmental irritants included fires, black smoke, feces, and urine. He never received recreation during his segregation term at Menard. Plaintiff claims that his transfer to Menard amount to unequal treatment because other offenders at Shawnee were convicted for similar disciplinary measures but were not transferred. He further claims he was charged with different offenses that other offenders faced with drug-related discipline. Plaintiff then circles back to the argument that his disciplinary ticket should be viewed as flawed because there was no actual lab test performed, and he received other 'false' or 'frivolous' disciplinary tickets in the wake of the April 2024 charges, that were ultimately overturned as unfounded. (Doc. 15 at 7).

Plaintiff goes on to explain he submitted numerous grievances about his issues with the disciplinary process, his conditions of confinement, his need for medical

---

[1] Crawford was not named as a defendant in the case caption.
[2] He later says he went more than 100 days with only five showers.

treatment, and interference with his mail, but Galloway deemed all of the grievances non-emergencies. (Doc. 15 at 9). Plaintiff alleges the grievances were then forwarded to Defendant Counselor Moore for responses but he "never received a response." He also alleges that Counselor Moore is married to Allison Moore, which meant he had an incentive to not process Plaintiff's grievances. He alleges that after filing grievances on interferences and the personal relationship between the Moore's he was transferred to Menard out of retaliation. He alleges that he did not receive a "disciplinary transfer" as a result of the disciplinary adjudication in May of 2024, so retaliation was the cause of his transfer. (Doc. 15 at 9).

Plaintiff then turns to the conditions he experienced in segregation prior to his transfer. He says his cell was moldy, had excessive ants, and did not have any fresh air because the window was drilled shut. (Doc. 15 at 14). There was also constant noise and chaos in the form of banging/kicking on doors, and excessive screaming of fellow inmates. (Doc. 15 at 22). He repeatedly asked Defendants Garcia and Benard for cleaning supplies and fresh air. (Doc. 15 at 14). He also made the same requests to Defendants Delmon and Quatters and asked them to have his window unsealed. With no responses and after weeks in these conditions Plaintiff's breathing changed significantly, his lungs were irritated, he was short of breath, and he had a productive cough. He asked Defendant Benard for medical attention to no avail and got no response to medical request slips. During the same time, Plaintiff got no recreation, despite constantly requesting it from Defendants Benard and Garcia. Without exercise Plaintiff suffered

body aches, back pain, numbness, sharp shooting pain, and mental distress, among other things.

Mixed in with these overarching problems, Plaintiff alleges there were also several disturbances caused by fellow inmates during his segregation stay that impacted him. On April 13, 2024, there were several staff assaults, and the gallery was flooded. (Doc. 15 at 14, 16). The flood water was contaminated with urine and feces. Plaintiff alleges staff left the gallery in this state for four hours before inmate workers began to clean up, and even then inmates were left to clean their own cells with materials they had on hand. (Doc. 15 at 16). Plaintiff asked Delmon and Quatters for cleaning supplies and protective equipment, but he was merely told to use his own clothing and linens. He was forced to step into the infested water and alleges he developed related skin ailments that still requirement treatment with an ointment. He was forced to live with the soiled clothing he used to clean for 48 hours until laundry day and he got new bed linens a few days later. He claims he asked Defendants Benard, Delmon, Quatters, Garcia and John Does 1 and 2 for medical attention for rashes that burned and itched after the exposure, and for other preventive tests and immunizations.

On April 18, 2024, another incident occurred when urine was thrown on Defendant Quatters and also landed on the outside of Plaintiff's cell and chuck hole. The same sort of problem occurred on April 19, 2024, in the presence of Defendant Garcia. The urine and feces thrown remained on the outside of Plaintiff's door and emitted an odor for his whole stay in segregation. The substances remained on his chuck hole where food was passed into his cell. The April 19 incident also exposed Plaintiff to excessive

mace when the culprit was extracted from a neighboring cell.  Plaintiff choked and vomited from the fumes and the lack of fresh air.  (Doc. 15 at 16).  Plaintiff begged Defendants Benard and Garcia to remove him from his cell for fresh air, but his requests were declined.  (Doc. 15 at 18).

Plaintiff alleges that from April 13-19, 2024, he placed medical request slips to Nurse Maria and John Does 1 and 2 to no avail.  (Doc. 15 at 22).  During this time, he experienced rashes, discoloration of his feet, body aches, back pain, breathing problems, a productive cough, and other general ailments.  (*Id.*).  He adds that during his entire segregation stay he continued requests for medical care to Defendants Benard, Garcia, Nurse Maria, and John Does 1 and 2.  His emergency grievance to Warden Galloway about these issues was also denied or not answered. Plaintiff claims that his pain and problems intensified on May 2, 2024, and he informed the same officials but got no treatment or medical attention.  He claims a grievance about the same issues got no response.  (Doc. 15 at 24).

Plaintiff alleges he was "later" transferred to Menard where he was again housed in segregation.  (Doc. 15 at 24).  He complained of a specific instance at Menard on June 8, 2024.  At Menard he faced issues with exposure to human waste, smoke, and more.  He also had limited access to showers—with only five in his entire segregation stay.  (Doc. 15 at 24).  He complains about more specific issues at Menard but does not associate them with anyone in particular, so the Court will not recite the details here.  (Doc. 15 at 24, 26).

Plaintiff alleges in passing that his First Amendment rights were restricted because he experienced long periods of time with his incoming and outgoing mail delayed.  (Doc.

15 at 30). He alleges the delays restricted his access to the courts and to his lawyer, and also hindered communication with his family. He claims that the mail interferences were federal offenses, and that all of the issues he described in his complaint are violations of federal and state laws. (Doc. 15 at 30).

In closing, Plaintiff argues that based on his allegations, his stay in segregation from April to October of 2024 should automatically be deemed an atypical and significant hardship in relation to ordinary prison life. He alleges that his complaint states claims for violations of his First, Eighth, and Fourteenth Amendment rights. (Doc. 15 at 34).

In support of the complaint, Plaintiff submitted an assortment of documents, including some counseling receipts for grievances, and excerpts of disciplinary documents.

Based on the allegations in the Complaint, the Court designates the following counts:

**Claim 1:** **Fourteenth Amendment Due Process claim concerning the April 4, 2024, incident that led to Plaintiff's disciplinary conviction with the imposition of six months of segregation;**

**Claim 2:** **Equal protection claim concerning Plaintiff's disciplinary circumstances associated with the April 4, 2024, incident;**

**Claim 3:** **Retaliatory transfer claim against Defendants Allison Moore and Counselor Moore;**

**Claim 4:** **Eighth Amendment conditions of confinement or deliberate indifference claim against Defendants Benard, Garcia, Delmon, and Quatters;**

**Claim 5:** **First Amendment access to the courts or interference with mail claim.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### PRELIMINARY DISMISSALS

It is not sufficient to name someone in the caption, without further mentioning them in the body of the complaint. *See e.g., Black v. Lane*, 22 F.3d 1395, 1401 at n. 8 (7th Cir. 1994) (naming a defendant in the caption and generically describing their job, without also discussing their personal involvement in the factual allegations, is insufficient to state a claim). Plaintiff named Defendants Jacob Horn and Major Greaford without further discussing their roles in the factual narrative. As such, his naming of these individuals is insufficient to state a claim and they will be immediately dismissed without prejudice.

Throughout the complaint, Plaintiff mentions Warden Galloway in a variety of contexts. The allegations against Galloway about his involvement in the discipline are discussed below with Claim 1. The majority of the other mentions of Galloway related to grievance processing. Plaintiff claims that he alerted Galloway to his situation, but Galloway never responded or ignored him. However, Plaintiff also says in the complaint that he did not get a response to his grievances. He entered segregation on April 4, 2024,

and by June 8, 2024, at the latest he was at Menard.  Given that he was at Shawnee for just two months, and because he does not mention filing grievances until late April or early May of 2024, the Court does not find it plausible that Galloway can be faulted for failing to respond to grievances within the timeframe of about a month.  The timeframe is too tight to suggest ignorance to Plaintiff's situation, and the allegations about Galloway's involvement and knowledge are too vague to support a plausible claim for personal involvement as pled.   Thus, extraneous allegations against Galloway throughout the complaint are insufficient to state a claim.

Additionally, the Court notes that Plaintiff included detailed allegations about the conditions he endured in segregation at Menard, but he did not associate these allegations with any individual defendants.  In fact, he did not name any defendants who work at Menard.  Without allegations about personal involvement of employees at Menard, Plaintiff cannot proceed against anyone for these allegations.  To the extent that he perhaps intended to attribute the conditions he experienced at Menard to people involved in his discipline at Shawnee, any such theory is unavailing because he does not plausibly suggest that individuals involved in his discipline knew that the conditions in segregation at Menard would be materially different from segregation at any other IDOC facility.  *See e.g.*, *Adams v. Reagle*, 91 F.4th 880, 894-95 (7th Cir. 2024) (with respect to restrictive housing conditions an inmate experienced at a new facility after being disciplined and transferred at a prior facility, there was no evidence the officials at the disciplining facility knew about the conditions at the new location or that their positions

gave them any authority over those conditions). Thus, the Court will not further entertain allegations about Menard.

## DISCUSSION

**<u>Claim 1</u>**

Plaintiff alleges that in May of 2024 he was disciplined for a drug-related offense and the disciplinary proceedings violated his right to Due Process. He specifically takes issue with the steps that led up to the disciplinary hearing. He alleges he was held on investigation status for 12 days when it should have been 10, and when he met with Defendants Harmon and Moore for an investigation interview, the evidence they presented was faulty. He argues that the drug field test was known to produce false positives at a rate as high as 38% and thus the suspected material should have been sent to a lab for testing. He also complains that Harmon told him about one timeline of events, but Harmon's recollection, Plaintiff's memory of things, and the eventual disciplinary ticket all contained divergent timelines. He was found guilty at a disciplinary hearing on May 1, 2024. The hearing was conducted by Defendants R. Johnson and C/O L. Reed, and Defendants Bradford, Hill, Crawford, and Galloway all played a role in "signing for" the disciplinary action. He received six months of segregation and restrictions on visits, and 3 months of C-grade.

To establish a due process claim related to disciplinary proceedings, an inmate must demonstrate: (1) the deprivation of a liberty interest; and (2) the procedures he was afforded were constitutionally deficient. *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019). Six months in segregation and six months' loss or restriction of privileges—do not,

without more, implicate a protected liberty interest. *See Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (six-month disciplinary segregation alone); *Lekas v. Briley*, 405 F.3d 602, 605, 613 (7th Cir. 2005) (temporary loss of contact visitation and restricted commissary); *Whitford v. Boglino*, 63 F.3d 527, 533 n.7 (7th Cir. 1995) (six-month disciplinary segregation and demotion to C grade). A plaintiff may also argue that the combination of disciplinary measures deprived him of a protected liberty interest. *See Kervin v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015).

Plaintiff's segregation term of six months does not automatically invoke a protected liberty interest, though he argues at length that the conditions were so oppressive they should automatically be considered an atypical and significant hardship. Regardless of if the conditions were atypical and significant, Plaintiff does not argue that the disciplinary hearing itself was invalid. For example, he does not argue he was prevented from presenting evidence or witnesses on his behalf, nor does he argue the hearing results were not supported by at least some evidence. Even more significantly, Plaintiff only received punishments such as segregation and a C-grade, but he did not suffer a loss of good time credit. As such, his disciplinary proceedings are subject to a less stringent standard of informal due process. Informal due process requires only that an inmate is provided (1) notice of the reasons for his placement in segregation, (2) and an opportunity to present his views in a written statement or hearing. *Ealy v. Watson*, 109 F.4th 958, 965 (7th Cir. 2024). Applying the informal due process analysis, Plaintiff readily admits he had notice of the charges from the investigative hearing and a subsequent ticket, and he also admits he had a formal hearing. Given this information,

Plaintiff has not stated a plausible Due Process claim related to his disciplinary proceedings and Claim 1 must be dismissed.

Claim 1 contained the only allegations against Defendants Harmon, M. Hill, Lt. Bradford, Lt. R. Johnson, and C/O L. Reed, so these defendants are dismissed from this action. The allegations against Galloway in relation to signing for the disciplinary outcome are also dismissed.

**Claim 2**

Plaintiff alleges that he was not treated equally relative to other inmates who faced similar disciplinary charges. Specifically, he claims other inmates with similar charges and even repeat infractions did not get transferred to Menard. He also claims that he was charged with two infractions which imply actual possession, when in fact he should have been charged with an attempt/conspiracy charge because he never actually possessed the mail or physical drugs. (Doc. 15 at 15).

The Equal Protection Clause forbids a state actor from arbitrarily treating one group worse than another group. *Clark v. Reed*, 772 F. App'x 353, 354 (7th Cir. 2019). The class of one equal-protection doctrine recognizes that the Equal Protection Clause may give rise to a cause of action "where the plaintiff does not allege membership in a class or group if the plaintiff can show that [ ]he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 685 (7th Cir. 2013) (cleaned up). Class of one claims cannot be used to challenge discretionary government actions, such as the decision whether to initiate prosecution or whether to grant parole. *Katz-Crank v.*

*Haskett*, 843 F.3d 641, 649 (7th Cir. 2016); *Adams v. Meloy*, 287 F. App'x 531, 534 (7th Cir. 2008).  In both *Clark* and *Adams*, the Seventh Circuit found that prisoners were unable to bring class of one challenges to decisions by prison administrators about employment and parole because decisions of either sort were discretionary.

Prison transfers are discretionary, so Plaintiff cannot demonstrate that his Equal Protection rights were violated by his transfer.  He also attached an excerpt of his counseling summary which shows his discipline did not include a disciplinary transfer, so he has not even plausibly established that he was transferred because of the discipline as opposed to some other discretionary reason.  As to Plaintiff's allegation he was charged with two offenses suggesting actual possession when he should have been charged with a different attempt or conspiracy charge, disciplinary charging decisions are also discretionary, so this cannot form the basis for an Equal Protection claim.  Plaintiff also does not clearly associate his Equal Protection allegations with any of the individual defendants' personal actions, so even if he had a plausible equal protection claim, it is insufficiently pled to proceed where it is not associated with a named defendant.  He mentions Defendants Allison Moore, Harmon, and Galloway in the section where he talks about his treatment relative to others, but he does not explain how they singled him out, or what improper and unfair motive they might have had to treat him differently.  Thus, Claim 2 is dismissed as insufficiently pled.

**<u>Claim 3</u>**

In addition to suggesting that his transfer violated his right to Equal Protection, Plaintiff also argues the transfer was retaliatory.  He claims retaliation occurred because

Defendant Allison Moore is married to Defendant Counselor Moore, and Counselor Moore interfered with his grievances. (Doc. 15 at 7-9). The Court will consider Plaintiff's grievance activity to be protected speech for now. However, to establish a retaliation claim, an individual must allege that he engaged in protected speech, he suffered an adverse consequence that would deter a person of ordinary firmness from engaging in protected speech, and the adverse consequence was motivated or caused by the protected speech. Plaintiff's assertion that his transfer was retaliatory is entirely speculative. He gives no evidence to support a causal link between his grievances and his transfer. Thus, Claim 3 is insufficient as pled.

**Claim 4**

Plaintiff alleges that during his segregation stay at Shawnee that lasted from April 4, 2024, until his transfer to Menard, he suffered numerous problematic conditions. His cell was moldy, rusty, and infested by ants. His window was sealed shut, preventing him from getting any fresh air. Over time, it also became polluted inside and outside by human waste from floods and misdeeds of other inmates. He asked for cleaning supplies from Defendants Garcia, Benard, Delmon and Quatters on numerous occasions, but he was always refused supplies and one time he was even forced to clean human waste from the inside of the cell with his own linens and then could not launder anything for 48 hours. He claims on another occasion his cell filled with mace during an extraction of another inmate, but his window was drilled shut and he was refused fresh air. He choked, struggled to breath, and vomited. In addition to the filth and contaminants, he

claims he was not allowed any recreation for the duration of his stay. He attributes numerous aches and pains and overall atrophy to the lack of exercise.

To establish a conditions of confinement claim, an inmate must establish (1) a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and (2) where prison officials are deliberately indifferent to this state of affairs. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016), *citing Farmer v. Brennan*, 511 U.S. 825, 824 (1994). Conditions may be considered collectively when analyzing a conditions of confinement claim, and the duration of the allegedly harmful conditions is relevant to the existence of an Eighth Amendment violation. *Id.* Many conditions standing alone may not be sufficient to give rise to an Eighth Amendment conditions of confinement claim, but they must also be considered collectively. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). "Lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened." *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996); *see also Delaney v. DeTella*, 256 F.3d 679, 684 (7th Cir. 2001) (holding that inmate denied meaningful chance to exercise for six months created viable Eighth Amendment claim).

Here, Plaintiff alleges instances of filth (human waste) and environmental problems (mold, mace and smoke) that plagued his whole stay in segregation. He asked Defendants Garcia, Benard, Delmon and Quatters for ways to remediate these issues but was denied. He also alleges a total lack of exercise that had repercussions for his physical health. At this juncture, these allegations are sufficient to proceed against Defendants

Garcia, Benard, Quatters and Delmon, who were allegedly notified on numerous occasions of Plaintiff's situation, and the physical repercussions of his conditions (rashes, trouble breathing, back pain, muscle pain, etc..).

Plaintiff may also proceed on a theory of deliberate indifference against the same defendants because he alleges they knew of his requests for medical care for the ailments he developed but refused any assistance.  By contrast, Plaintiff also mentions Defendants John Does 1 and 2 in relation to his requests for healthcare, but he does not give sufficient information about who these individuals are, how often he may have interacted with them, what he might have told them about his situation, or how they responded.  At most he says from April 13-19 he made sick call requests to them, but this is still too vague.  In other instances they are merely included in shotgun lists of defendants with Garcia, Benard, Delmon, and Quatters.  *See e.g., Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (the assertion that "one or more defendants" engaged in certain acts is not sufficiently detailed to sustain a § 1983 action).  The Court finds the allegations against John Does 1 and 2 too vague to survive.  The Court also notes that Plaintiff mentioned a "Nurse Maria" in the same instances as John Does 1 and 2, but he did not name this person in the case caption, so no claim will proceed against Nurse Maria.

## Claim 5

Finally, Plaintiff repeats allegations about interference with his First Amendment rights via delays with his incoming and outgoing mail.  He claims this inhibited his access to the courts, and limited his ability to communicate with family, friends, and attorneys.

Whatever merit this allegation may have, it is not associated with individual defendants, so it may not proceed.

### DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 4** of the Amended Complaint (Doc. 15) survives initial screening as described above against Defendants Garcia, Benard, Delmon, and Quatters.  By contrast, **Claims 1-3 and 5** are insufficient to state a claim, and all other allegations are insufficient.  Plaintiff has failed to state claims against defendants Warden Galloway, C/O Harmon, Counselor Moore, John Doe 1, John Doe 2, Jacob Horn, M. Hill, Lt. Bradford, C/O Johnson, A. Moore, Major Greaford and L. Reed, so the Clerk of Court is **DIRECTED** to **TERMINATE** these parties.

The Clerk of Court is **DIRECTED** to prepare for the Sgt. Benard, C/O Garcia, Sgt. Delmon and C/O Quatters: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 15), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for

sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. Fed. R. Civ. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

Dated: November 1, 2024

_____
DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.