IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DEMETRIUS FLOWERS, B89995,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 24-cv-1538-DWD |
| | ) |
| **SGT. BERNARD,** | ) |
| **C/O GARCIA,** | ) |
| **SGT. DELMON,** | ) |
| **C/O QUATTERS,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Demetrius Flowers, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Menard Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Shawnee Correctional Center (Shawnee). Plaintiff alleges that he experienced unconstitutional conditions of confinement in segregation from April 4, 2024, through May 22, 2024, when he was transferred from Shawnee to Menard. Defendants filed a Motion for Summary Judgment (Doc. 58) on the issue of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Plaintiff timely responded (Doc. 62), Defendants replied (Doc. 63), and

the matter is now ripe for consideration. For reasons explained, Defendants' Motion is granted as to Defendant Garcia, but it is denied as to Defendants Delmon and Quatters[1].

## BACKGROUND

Plaintiff initiated this lawsuit by filing a Complaint on June 20, 2024, and an amended complaint on October 1, 2024. (Docs. 1, 14). In short, Plaintiff alleged that from April 4, 2024, through May 22, 2024, he experienced inadequate conditions of confinement in segregation at Shawnee. He specifically complains there was mold in his cell, his cell was contaminated with human waste multiple times, and his window was drilled shut, depriving him of fresh air. During gallery disturbances, such as an incident on April 13, 2024, the gallery was contaminated with waste, and on another occasion it was also filled with mace. Plaintiff claims he was deprived all out of cell recreation and suffered physical and mental effects. In the complaint, he alleges he repeatedly notified the four defendants of these issues and of his need for medical care to no avail.

The Court allowed Plaintiff to proceed on the following claim:

**Claim 4:** Eighth Amendment conditions of confinement or deliberate indifference claim against Defendants Bernard, Garcia, Dillman, and Quertermous.

(Doc. 16).

The parties undertook discovery on the exhaustion of administrative remedies, and in doing so they have identified a handful of grievances relevant to the claims in this

---

[1] Plaintiff named Delmon and Quatters, and the Court successfully issued service on individuals by these names, but in the Answer (Doc. 30), and Motion for Summary Judgment (Doc. 58) these Defendants identify themselves as Keiler Dillman and Seth Quertermous. The Clerk of Court shall **UPDATE** the docket sheet to replace Delmon with Keiler Dillman, and Quatters with Seth Quertermous.

case. Defendant Bernard does not seek summary judgment on exhaustion, and the parties agree that an unnumbered May 13, 2024, grievance exhausted the allegations against him. (Doc. 59-2 at 22-27). Defendants Garcia, Dillman and Quertermous seek summary judgment arguing that there are no grievances sufficient to exhaust Claim 4 against them. Plaintiff counters that he attempted to submit multiple grievances about their conduct but could not get responses from the prison. Defendants maintain that the contents of Plaintiff's grievances did not sufficiently identify Dillman or Quertermous, and did not describe wrongdoing by Garcia.

### FINDINGS OF FACT

On April 25, 2024, Plaintiff submitted grievance number K19-0424-0797 concerning the conditions of his confinement and contamination with human waste. (Doc. 59-2 at 39-41). He alleged that beginning around April 15, 2024, there were several staff assaults with urine and feces thrown about the gallery, and flooding of the gallery. Plaintiff alleged in the grievance that during this process he "stated to several officials about the condition of my cell flooded with water, urine, & particles of feces, asking for medical attention, proper cleaning materials. [] This resulted in officials unknown name and badge numbers due to not being provided when asked stating to use my very own clothing and bed linens to soak up as much water as possible and to use what ever I could to clean the best." (Doc. 59-2 at 41). Plaintiff went on to describe additional staff assaults, including on April 20, 2024, when Defendant Garcia was assaulted with urine in front of Plaintiff's cell. He alleges during this incident the urine covered and permeated his cell, and excessive mace was used by a tactical team to extract the individual who perpetrated

the attack. (Doc. 59-2 at 41). Plaintiff alleged he was left unable to breath due to the mace for hours because his window was drilled shut, despite staff being afforded gas masks. (*Id.*). Grievance K19-0424-0797 was denied emergency status by the Warden on May 1, 2024, and it was stamped as received by the Administrative Review Board on May 15, 2024. On October 9, 2024, the ARB rejected the grievance because "no name or descriptions of staff given for the staff misconduct. Therefore, cannot be investigated." (Doc. 59-2 at 39).

On April 29, 2024, Plaintiff submitted grievance number K19-0524-0828 concerning his lack of access to out of cell recreation, and his lack of cleaning supplies from April 4, 2024, through April 29, 2024. (Doc. 62 at 31). On May 28, 2024, a counselor indicated "Individual Flowers B89995 was transferred to Menard C.C. on 5/22/2024 and is no longer housed at Shawnee C.C." (*Id.*).

On May 13, 2024, Plaintiff submitted a grievance that was not assigned a grievance number. (Doc. 59-2 at 22-27). In the grievance Plaintiff alleged that on April 4, 2024, he was relocated to restrictive housing, where he noticed mold and discoloration on his bed set, and mold on his vent. The window was drilled shut, so he could not open it to access fresh air. (Doc. 59-2 at 23-24). He notified Defendant Bernard and asked for cleaning materials, but Bernard refused. Plaintiff also asked Bernard for recreation over time, but Bernard refused. Plaintiff alleged that Bernard "and other staff" stated that he could not have recreation based on the ongoing disciplinary investigation. (Doc. 59-2 at 24). Plaintiff went on to allege that he had written multiple grievances about his situation with no response, including grievances K19-0424-0797 and K19-0524-0828. He claims he

attempted to follow up via the warden, counselor, and grievance officer via written correspondence, but got no answers. Plaintiff marked the grievance as an emergency, and it was received by the ARB on May 15, 2024. (Doc. 59-2 at 23).

Despite transmission of the unnumbered grievance to the ARB, the Defendants' grievance records include a copy of the grievance with a response in the "counselor's response" box. (Doc. 59-2 at 26). The counselor wrote, "all accusations made by Flowers B89995 are false towards this reporting Sgt. Bernard. Cell cleaning supplies are offered out on Sundays during the 7-3 shift to all individuals in RH to give individuals the opportunity to clean their cell. Flowers was offered out of cell time in accordance with AD 05.15.100 the same as the other individuals in restrictive housing." (Doc. 59-2 at 26). It appears that the counselor response was signed by Sergeant Bernard, and that it was stamped as received by the ARB on May 17, 2024, though the stamp is difficult to read. (*Id.*). On October 29, 2024, the unnumbered grievance was returned to Plaintiff from the ARB with an indication that it was being denied because Sergeant Bernard denied Plaintiff's allegations. (Doc. 59-2 at 22). Plaintiff agrees in his response to summary judgment that this unnumbered grievance did not name or describe Dillman, Quertermous, or Garcia. (Doc. 62 at p. 3, ¶ 12(a)).

On May 3, 2024, Plaintiff prepared a grievance about alleged due process violations related to disciplinary proceedings. (Doc. 59-2 at 20-21). On October 31, 2024, the ARB denied the grievance and concluded that Plaintiff's due process rights were not violated in the disciplinary proceedings. (Doc. 59-2 at 13).

On May 9, 2024, Plaintiff drafted a grievance alleging he spoke to counselor Moore face to face about threats he had been receiving, and about an emergency grievance he had filed. (Doc. 62 at 12). The grievance is entirely focused on Plaintiff's efforts to inform internal affairs that he was receiving threats, and it ultimately catalogues information about threats and debts and drugs within the prison that he was able to relay to internal affairs. (Doc. 59-2 at 53-54). Plaintiff sought protective custody and a transfer. (Doc. 59-2 at 53). The grievance was stamped as received by the ARB on May 22, 2024. (*Id.*). On May 30, 2024, after contacting the prison about Plaintiff's protective custody placement, the ARB responded that if Plaintiff still had concerns he should make a protective custody request at his facility. (Doc. 59-2 at 50-52).

On May 16, 2024, Plaintiff drafted a grievance about the lack of response to several grievances about his cell conditions, including grievance K19-0524-828. (Doc. 62 at 24-25). It was stamped as received by the ARB on May 20, 2024. On October 4, 2024, the ARB rejected the May 16 grievance because "it is inappropriate to file a new grievance on an already filed grievance." (Doc. 62 at 36) On May 16, 2024, Plaintiff drafted a second grievance about his requests for protection, and alleged his grievances and emergency grievances were not getting responses. (Doc. 59-2 at 34-45). On May 19, 2024, Plaintiff drafted a grievance about alleged interference with his access to the grievance process by counselor Moore. (Doc. 62 at 13-14). He specifically stated several grievances on several issues had not received responses because Counselor Moore had personal relationships with staff implicated in the grievances. Plaintiff alleges the interference was done as

retaliation, and with malicious intent. On October 4, 2024, the ARB denied the grievance because "no dates of occurrence were given." (Doc. 62 at 15).

On May 23, 2024, Plaintiff submitted another grievance (0524-2416) at Menard challenging the same discipline. (Doc. 59-2 at 11-12). Menard indicated the discipline and hearing occurred at another prison, and thus it was outside of their jurisdiction. (Doc. 59-2 at 9). Plaintiff was advised to bring the issue to the ARB, and he signed the outcome as appealed on July 11, 2024. (Doc. 52-9 at 9). The ARB again denied the issue, finding Plaintiff's due process rights were not violated. (Doc. 52-9 at 2).

In addition to the grievances discussed in this section, Plaintiff's submissions include passing mention of grievances numbered K19-2404-207 (Doc. 62 at 38) and K19-0524-0825 (Doc. 62 at 22). There is not enough information in the records provided by either side for the Court to discern the contents of these grievances.

The ARB grievance log reflects that the ARB received 10 grievances from Plaintiff in 2024 concerning the issues with discipline and segregation at Shawnee from April 4, 2024, through May 22, 2024. (Doc. 59-2 at 1). The prison's local grievance logs only reflect receipt at Shawnee of grievance K19-0524-0828 concerning recreation time or cleaning supplies in segregation. (Doc. 59-4 at 1). The log from Menard reflects receipt of grievance 0524-2416 concerning Plaintiff's desire to challenge the disciplinary proceedings from Shawnee. (Doc. 59-4 at 2).

Sara Quick, a grievance officer at Menard, averred that she reviewed Plaintiff's grievance records possessed in his master file, and the only grievance she located relevant to Plaintiff's conditions of confinement in segregation at Shawnee was grievance K19-

0524-0828. (Quick Decl., Doc. 59-5 at ¶ 13). Travis Bayler, an ARB chairperson, averred that of 10 grievance appeals the ARB received from Plaintiff in 2024, only two were relevant to the issues in this complaint. (Bayler Decl., Doc. 59-3 at ¶ 12). Specifically, he indicated that the unnumbered May 13, 2024, grievance about conditions and Sergeant Bernard was received, and grievance K19-0424-0797 concerning cellhouse flooding and waste was received for appeal. (*Id.* at ¶¶ 13-14). The May 13 grievance was denied on the merits, but grievance K19-0424-0797 was returned without a decision on the merits because it did not give names or descriptive information about staff. (*Id.*).

Plaintiff submitted his own affidavit in support of his summary judgment response wherein he argued that he submitted 10 grievances about his conditions in April and May of 2024 at Shawnee, and that all should be read together to understand Plaintiff was repeatedly raising his concerns to the grievance process and prison officials to no avail. (Pltf. Decl., Doc. 62 at 40-43). He argues grievance K19-0424-0797 did not include names of Dillman and Quertermous because they refused to provide that information, thus obstructing his ability to grieve their conduct. He plainly states that grievance K19-0424-0797 identifies Garcia as being present when human waste was on the gallery, but admits that Garcia then left and was not involved in any substantive allegations. (*Id.* at 43) ("Garcia was unavailable due to removal from results of the incident/staff assault.").

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In

determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).[2] After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g.*, *Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available

---

[2] The Supreme Court's recent opinion in *Perttu v. Richards*, 605 U.S. 460 (2025), held that if the facts necessary for a ruling on exhaustion are intertwined with the merits of the claim, a jury trial is required. But the *Perttu* Court did not go so far as to extend the Seventh Amendment right to a jury trial to all exhaustion disputes. In this case, there is no intertwinement of the facts, so *Perttu* does not require that this issue be determined at a jury trial.

administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

There are no exceptions to the exhaustion requirement, however, the Supreme Court and Seventh Circuit have emphasized in recent years that the exhaustion process must be available. An "available" remedy is one that is "capable of use for the accomplishment of a purpose" and "is accessible or may be obtained." *Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022) citing *Ross v. Blake*, 578 U.S. 632, 642 (2016). If availability is at issue, the Court must resolve that issue before proceeding to the merits of the exhaustion dispute. *Wallace v. Baldwin*, 55 F.4th 535, 539 (7th Cir. 2022) (the district court must first consider the threshold question of if exhaustion was available). In *Dole* and *Gooch*, the Seventh Circuit considered situations where a process was unavailable due to acts or misrepresentations by prison administrators. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (finding that an inmate did all he could to exhaust a grievance when he placed the appeal in his cell bars for mailing, but it got lost and he had no direction on what to do about a lost grievance); *Gooch v. Young*, 24 F.4th 624 (7th Cir. 2022) (finding the grievance process was unavailable where prison staff threatened Plaintiff and refused to give him the appropriate grievance form).

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). Section 504.810(c) requires that a grievance state: "what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. 20 ILL. ADMIN. CODE § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* If an inmate is appealing a grievance that the CAO determined to be of an emergency nature, then the ARB shall expedite processing of the appeal. 20 ILL. ADMIN. CODE § 504.850(f). Section 504.870(a) provides that offenders can submit grievances directly to the ARB concerning protective custody placement, disciplinary proceedings at a facility other than the facility where the offender is currently assigned, and all other issues about a facility other than the offender's current facility (except for personal property and medical issues).

B. Analysis

It is undisputed that Plaintiff exhausted his claim against Defendant Bernard in the unnumbered grievance submitted on May 15, 2024. Plaintiff argues that he exhausted his allegations against Garcia by naming Garcia in grievance K19-0424-0797, but a close reading of this grievance and Plaintiff's own admission in his affidavit do not support this position. In the Amended Complaint, Plaintiff described Garcia as someone regularly in the segregation cellhouse whom he informed of his daily problems with access to recreation and cleaning supplies. These allegations would be consistent with the unnumbered grievance against Defendant Bernard, but that grievance contained no mention of Garcia. The factual allegations are also consistent with grievance K19-0524-0828, which generically complained about conditions, but that grievance did not name or describe any prison staff. By contrast grievance K19-0424-0797 only mentions Garcia in so much as he was present during a bout of cellhouse unrest where he was struck by urine thrown upon him by an inmate. In his own affidavit, Plaintiff stated that Garcia left the cellhouse and was not involved in other incidents on that day. Substantively, this information about Garcia does not align with Plaintiff's factual allegations against Garcia in the Amended Complaint, and thus grievance K19-0424-0797 is not sufficient to exhaust Claim 4 of this case against Defendant Garcia. The Court carefully and meticulously reviewed all grievance records submitted by both sides and found no other mentions of Garcia anywhere in the records. Thus, Claim 4 against Garcia is unexhausted and must be dismissed without prejudice.

By contrast, grievance K19-0424-0797 is sufficient to exhaust Claim 4 against Defendants Dillman and Quertermous.  Defendants argue that the grievance is not sufficient for this purpose because it did not name or describe these two and it was rejected for this reason by the ARB, but the Court finds the ARB's ruling erroneous in this respect.  Defendants have not pointed to any legal authority to support their position that the grievance was inadequate, other than the grievance procedure itself.

In grievance K19-0424-0797 Plaintiff clearly and unequivocally complained that he spoke to officers in the cellhouse about human waste and the need for cleaning supplies and medical attention, but they refused to identify themselves.  Neither the PLRA nor IDOC's grievance rules require an inmate to name each individual involved in an incident within the body of the grievance.  See *Jones v. Bock*, 549 U.S. 199, 217 (2007) ("[N]othing in the [PLRA] imposes a 'name all defendants' requirement.").  The Seventh Circuit has recently reiterated that a grievance must contain enough information about a problem so that the prison can properly investigate and resolve grievances.  See *Jackson v. Esser*, 105 F.4th 948, 960 (7th Cir. 2024).  The primary requirement is that a grievance contain enough information to put the prison on clear notice that unnamed defendants were involved.  *Id.*  Plaintiff's grievance was adequate for that purpose by stating he spoke with staff and asked for their names but got no answer.  He further explained that they refused cleaning supplies and told him to use his own linens to clean to the best of his ability.  It is not unreasonable to think that the prison could have used this information to investigate who was present in the cellhouse on that day, and who might have spoken to Plaintiff about cleaning supplies.  Therefore, the Court finds

grievance K19-0424-0797 adequate to exhaust Claim 4 against Dillman and Quertermous concerning the denial of cleaning supplies and medical attention after unrest on the gallery that left Plaintiff's cell contaminated with human waste.

## DISPOSITION

Defendants' Motion for Summary Judgment (Doc. 58) on the issue of exhaustion of administrative remedies is **GRANTED** in part as to Defendant Garcia because the record contains no proof that Plaintiff exhausted substantive grievances related to the allegations in Claim 4 against Garcia.  By contrast, the Motion is **DENIED** in part as it pertains to Defendants Dillman and Quertermous because grievance K19-0424-0797 was adequate to exhaust Claim 4 against Dillman and Quertermous concerning the need for cleaning supplies and medical attention on April 13, 2024.  Defendant Bernard's Motion to Withdraw the Affirmative Defense (Doc. 61) is **GRANTED**.

Claim 4 may proceed against Defendants Bernard, Dillman, and Quertermous, and Claim 4 will be dismissed without prejudice against Defendant Garcia.  The Clerk of Court shall **TERMINATE** Defendant Garcia now and shall enter judgment consistent with this Order concerning Defendant Garcia at the close of this case.

The Clerk of Court shall update the docket sheet consistent with footnote 1.

Plaintiff's Motion for Status (Doc. 64) is **GRANTED** by the issuance of this Order.

**IT IS SO ORDERED.**

Dated: January 7, 2026

/s/ *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge